UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONCHA GIAMMATTEI DE PRADO, ET AL | CIVIL ACTION |
| VERSUS | NO: 18-3302 |
| CITY OF NEW ORLEANS, ET AL | SECTION: "S" (3) |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Partial Summary Judgment** filed by the New Orleans Aviation Board ("NOAB") and Metro Service Group, Inc. ("Metro" (Rec. Doc. 85) is **DENIED.**

**IT IS FURTHER ORDERED** that Metro's **Motion to Disqualify Counsel** (Rec. Doc. 86) is **DENIED.**

### FACTUAL BACKGROUND

This matter stems from a slip and fall that occurred on a jet bridge at the New Orleans airport on March 31, 2017. Plaintiffs have alleged negligence against defendants including American Airlines, Inc., the City of New Orleans by and through the New Orleans Aviation Board ("NOAB"), Metro Service Group, Inc. ("Metro"), and Hubb's Properties, LLC ("Hubb's). All defendants deny liability.

NOAB contracted with Metro to provide janitorial services at the airport. Metro subcontracted with Hubb for the janitorial services. The NOAB contract with Metro includes the following provision:

[Metro] shall fully indemnify, save harmless and defend the City of New Orleans, the NOAB, the Director of Aviation or his/her designee and all their respective officers, agents, employees, representatives and attorneys (herein referred to as "Indemnitees") from and/or against all suits, actions, claims, damages, losses and expenses, direct, indirect or consequential (including but not limited to fees and charges of engineers, architects, attorneys and other professionals and court and arbitration costs) of any character, name, and description brought for or on account of any injuries or damages (including but not restricted to death) received or sustained by any persons or property on account of, arising out of, or in connection with: 1. The operations of [Metro], its subcontractors, and lower-tier contractors; or 2. any negligent act or intentional omission, misconduct, or fault of [Metro], its subcontractors, and lower-tier contractors or their agents or employees in the execution of the Contract or performance of the Work; or 3. the failure of [Metro], its subcontractors, and lower tier contractors to provide necessary barricades, warning lights, or signs; …

Metro-NOAB Contract, ¶ 41.01.1-.3.

Likewise, the Metro contract with Hubb provides:

Indemnification: To the fullest extent permitted by law, each party hereto shall indemnify, defend and hold harmless the other party, its agents and employees (collectively, the Indemnified Parties) from and against any and all claims, demands, suits, and judgments of sums of money accruing against the Indemnified Parties for loss of life or injury or damage to person or property arising from or relating to any act or omission or the operation of the indemnifying party, its agents or employees while engaged in or in connection with the discharge or performance of any obligations under this Subcontract; and for any and all claims and/or liens for labor or services furnished in connection with the performance of the indemnifying party under this Subcontract.

Metro-Hubb Contract, ¶ 6.

Following the suit for the injury on the jet bridge, pursuant to the terms of their agreement, Metro tendered its defense to Hubb's. Hubb's responded by providing a defense to Metro. NOAB tendered the claim against it to Metro and its insurer, State National Insurance Company ("State National") seeking defense and indemnity, but neither Metro nor its insurer

2

replied. Characterizing this as a constructive denial of the tender, on July 6, 2018, NOAB filed a crossclaim against Metro and a third-party claim against its insurer, State National, alleging negligence on the part of Metro and that Metro and State National had breached their obligations to provide indemnity and defense for plaintiffs' claims, as required by the NOAB contract with Metro.

On January 9, 2019, upon motion by NOAB representing that the parties had reached an agreement, the court dismissed NOAB's claims against Metro and State National with prejudice. Metro and NOAB now seek summary judgment finding that Hubb's's contract with Metro requires it to indemnify NOAB as well as Metro. Metro also seeks reimbursement for certain defense costs.[1] Put another way, Metro seeks to be indemnified by Hubb's for Metro's indemnity obligation to NOAB. Metro also seeks to disqualify Hubb's' counsel, arguing that they previously represented Metro and now have adverse interests, and Metro is not willing to waive the conflict.

**I.     Motion for Partial Summary Judgment**

*Summary Judgment standard*

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any

---

[1] Metro does not state with specificity, or provide any documentary evidence in support of, its reimbursement claim.

material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

*Interpretation of contracts/indemnity agreements*

Generally, the "rules governing the interpretation of contracts apply in construing indemnity agreements," and thus the "language in the indemnity agreement dictates the obligations of the parties." Hai Nam Chinese Rest. P'ship. v. B & B Const. of New Iberia, 942 So.2d 97, 105 (La. Ct. App. 2006). The interpretation of an unambiguous contract is an issue of law for the court. Amoco Prod. Co. v. Texas Meridian Resources Exploration Inc., 180 F.3d 664,

4

668 (5th Cir.1999). Interpreting a contract is determining the common intent of the parties. LA. CIV. CODE art. 2045. "Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis." Amitech U.S.A., Ltd. v. Nottingham Const. Co., 57 So.3d 1043, PAGE (La. Ct. App. 2010). Further, "[i]ntent is an issue of fact which is to be inferred from all of the surrounding circumstances." Id. (citing Freeport–McMoRan, Inc. v. Transcontinental Gas Pipe Line Corp., 924 So.2d 207, 213 (La. Ct. App.2005).

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. "In addition, a contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." Texas E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir.1998). Each provision of a contract must be interpreted in light of the other provisions "so that each is given the meaning suggested by the contract as a Whole." LA. CIV. CODE art. 2050.

*Discussion*

In the present case it is undisputed that Metro agreed to indemnify NOAB for the plaintiffs' claims arising out of, or in connection with, the operations or negligence of Metro or its subcontractors. What remains in issue is what Hubb's agreed to indemnify Metro for – specifically, if Hubb's' indemnity of Metro extended to include indemnity for Metro's negligence

5

and/or contractual obligations of Metro connected to Metro's work at the airport.[2]

The Hubb's/Metro indemnity clause provides that each of them agreed to "indemnify, defend and hold harmless **the other party, its agents and employees** (collectively, the **Indemnified Parties**) from and against any and all claims, demands, suits, and judgments of sums of money accruing against the Indemnified Parties **for loss of life or injury or damage to person or property arising from or relating to any act or omission or the operation of the indemnifying party**, its agents or employees while engaged in or in connection with the discharge or performance of any obligations under this Subcontract. . . ."

Applying this language, Hubb's is required to indemnify Metro for *Hubb's'* (the indemnifying party's) acts or omissions, not Metro's. However, NOAB's crossclaim against Metro was premised on two things: *Metro's* alleged negligence, and *Metro's* alleged breach of its contractual agreement with NOAB, to which Hubb's was not a party. The indemnity obligation does not contemplate Hubb's indemnifying Metro either for Metro's own negligence, or Metro's breach of a contract to which Hubb's was not a party.

"A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms." Perkins v. Rubicon, Inc., 563

---

[2] Hubb's' opposition memorandum characterizes NOAB's claims against Metro as solely based on contract. In fact, NOAB specifically alleged negligence by Metro for, inter alia, failure to police the jetway at issue for any spills, leakage, or similar conditions, failure to discover the condition that caused plaintiffs' damages, and failure to place signage at the spill site. Crosslaim, Rec. Doc. 36, ¶¶ VI, IX.

So. 2d 258, 259 (La. 1990). Because the indemnity agreement between Hubb's and Metro does not include specific language reflecting an intent by Hubb's to indemnify Metro for Metro's own negligence, the agreement cannot be construed to require Hubb's to indemnify Metro for NOAB's claims of negligence by Metro. Thus, until the alleged negligence of the individual defendants is established and apportioned, a judgment on the indemnity is premature. See <u>Suire v. Lafayette City–Parish Consol. Gov't</u>, 907 So.2d 37, 51 (La. 2005).

Moreover, to the extent Metro seeks indemnity from Hubb's' for claims based upon Metro's contract with NOAB, "[i]n cases involving similar claims for indemnity for one contracting party's contractual indemnification obligations to a third party, the jurisprudence consistently holds that such a claim is viable only when the applicable contractual language is clear and express and the alleged indemnitor has notice of the obligation and gives his express consent thereto." <u>Marshall v. Sw. Louisiana Elec. Membership Corp.</u>, 915 So. 2d 1026, 1029 (La. App. 2005). In this case, there is no contractual language that suggests that Hubb's intended to indemnify Metro for its breach of contract with third parties, including NOAB. Accordingly, Metro and NOAB are not entitled to a partial summary judgment finding that Hubb's must indemnify both Metro and NOAB.

## II. Motion to Disqualify Counsel

In this motion, Metro seeks to disqualify Brandi Ermon and Andre Gaudin and their firm, Burglass and Tankersley, LLC (hereinafter, collectively "Burglass"), from representing Hubb's. In so moving, Metro alleges (and Hubb's does not dispute) that Burglass initially represented Metro and filed an answer on its behalf, and now represents Hubb's. Metro also contends that it

7

has tendered its defense and demanded indemnity from Hubb's, and has filed a motion for contractual indemnity from Hubb's to recoup expenses paid by Metro, and thus its interests are now materially adverse to Hubb's. Metro declines to waive any conflict. Metro further claims that in Burglass's prior representation of Metro, it gained specific information (some privileged) and facts regarding Metro's defense, which could be used to Hubb's advantage in the present action to the prejudice of Metro.

Hubb's opposes, contending that Metro has filed a baseless motion for partial summary judgment on indemnity in an attempt to manufacture "adverse interests" which are not present, and for all practical purposes, the parties are aligned. Hubb's argues that it was not named as a defendant in the original Petition, and Burglass was retained to represent Metro. During discovery, Burglass learned from NOAB that Metro had a contract with Hubb's, and, since the deadline for filing amended complaints was near, filed a third-party demand against Hubb's. Subsequently, AXIS, Hubb's insurer, agreed to assume Metro's defense, and appointed Kyle Kirsch to represent Metro, and Burglass to assume the defense of Hubb's and AXIS. According to Hubb's, at that time it was determined among the parties that since Hubb's and Metro did not have conflicting interests and were being defended under the same insurance policy, there was no conflict.

Hubb's also argues that Burglass has never met with representatives of Metro, nor acquired confidential information from Metro or provided discovery responses on Metro's behalf. Burglass acknowledges that it did communicate with individuals believed to be Metro employees for the Rule 26 initial disclosures, but many of them turned out to be Hubb's

8

employees, and that the companies did not bother to differentiate themselves until Burglass learned through NOAB that Hubb's existed as a subcontractor of Metro. Burglass also argues that deposition testimony reveals that Hubb's and Metro refer to themselves interchangeably, and that a Metro employee supervises all Hubb's employees at the airport. Thus, Hubb's argues that for purposes of the settlement conference scheduled for May 14, 2018, Hubb's and Metro's interests are aligned and Metro has not met its burden of proving disqualification.

*Legal standard*

A motion to disqualify counsel is a substantive motion that affects the parties' rights and it is "'determined by applying standards developed under federal law.'" In re Am. Airlines, Inc., 972 F.2d 605, 610 (5th Cir. 1992) (quoting In re Dresser Indus., 972 F.2d 540, 543 (5th Cir. 1992)). "Federal courts may adopt state or ABA rules as their ethical standards, but whether and how these rules are to be applied are questions of federal law." Id. A court considering a motion to disqualify must "first look to 'the local rules promulgated by the local court itself.'" In re ProEducation Int'l, Inc., 587 F.3d 296, 299 (5th Cir. 2009) (quoting FDIC v. U.S. Fire Ins. Co., 50 F.3d 1304, 1312 (5th Cir. 1995)). Under its Local Rules, the United States District Court for the Eastern District of Louisiana has adopted the Rules of Professional Conduct ("RPC") of the Louisiana State Bar Association. E.D. La. Local R. 83.2.3.

A party moving to disqualify opposing counsel based on an alleged conflict of interest bears the burden of proving grounds for disqualification. Dresser Indus., 972 F.2d at 398. Determining whether counsel should be disqualified is a fact-specific inquiry. See Brennan's Inc. v. Brennan's Rests., Inc., 590 F.2d 168, 173-74 (5th Cir. 1979).

9

Relevant to the present case is RPC 1.9, which provides in part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
. . . .

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.[3]

*Discussion*

In this case, it is undisputed that Burglass formerly represented Metro in this matter, and now represents Hubb's. At issue is whether Metro and Hubb's are materially adverse. As the foregoing discussion of the Metro/NOAB motion for partial summary judgment demonstrates, it appears that Hubb's does not owe Metro any indemnity for Metro's negligence as alleged by NOAB, and the extent of Hubb's' indemnity obligation cannot be known until the defendants' negligence, if any, is established. Thus, vis-a-vis the plaintiffs' negligence claims, and for purposes of the settlement conference, Hubb's and Metro's interests are aligned.

Moreover, the only evidence put forth by Metro to establish the conflict is its

---

[3] Metro also argues that LPC 1.7, governing concurrent representation, is also applicable to the extent that Burglass's representation of Hubb's will be materially limited by Burglass's responsibilities to its former client. It is not addressed separately because the issues raised are subsumed in the consideration of LPC 1.9, concerning former representation.

unsuccessful motion on the indemnity claim. The burden of proof on the motion to disqualify lies with Metro, and the court finds that it has not met that burden. Accordingly,

**IT IS HEREBY ORDERED** that the **Motion for Partial Summary Judgment** filed by the New Orleans Aviation Board ("NOAB") and Metro Service Group, Inc. ("Metro" (Rec. Doc. 85) is **DENIED.**

**IT IS FURTHER ORDERED** that Metro's **Motion to Disqualify Counsel** (Rec. Doc. 86) is **DENIED.**

New Orleans, Louisiana, this 13th day of May, 2019.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**